UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF WISCONSIN

| | |
|---|---|
| UNITED STATES, *ex rel.*<br>DEBORA ROUSE and JANE TUCHALSKI<br><br>Plaintiffs,<br><br>v.<br><br>ODYSSEY HEALTHCARE, INC.<br><br>Defendant. | CASE NO.<br><br>FILED IN CAMERA AND UNDER SEAL<br><br>Filed *In Camera* pursuant to 31 U.S.C. §3730 (b) (2) |

**Complaint for Damages and Injunctive Relief Under False Claims Act- Qui Tam Action Under Seal**

Plaintiffs, United States ex rel. Debora Rouse and Jane Tuchalski, individually, and through their attorneys, Cross Law Firm, S.C., by Attorney Nola J. Hitchcock Cross, complain and allege the following:

### I. PARTIES

1. Relator, Debora Rouse, is a citizen of the United States of America and a resident of the County of Milwaukee, State of Wisconsin, residing at 512 Fairview Avenue, South Milwaukee, WI 53172.

2. Relator, Jane Tuchalski, is a citizen of the United States of America and a resident of the County of Waukesha, State of Wisconsin, residing at 1025 Tower Hill Drive, Brookfield, WI 53045.

3. Relator, Debora Rouse brings this action on behalf of the United States of America pursuant to 31 U.S.C. § 3729 *et seq.*

4. Relator, Jane Tuchalski brings this action on behalf of the United States of America pursuant to 31 U.S.C. § 3729 *et. seq.*

5. Defendant, Odyssey Healthcare, Inc. is, upon information and belief, a Delaware Corporation, with its principal place of business at its corporate office located at 717 N. Harwood Street, Suite 1500, Dallas, Texas 75201. Odyssey was, at all materials times to this complaint, authorized to collect Medicare benefits for services regulated by 42 C.F.R. § 418 *et seq.*

## II. JURISDICTION AND VENUE

6. This court has jurisdiction over the subject matter of this action pursuant to both 28 U.S.C. § 1331 and 31 U.S.C. § 3732, the latter of which specifically confers jurisdiction on this court for actions brought pursuant to 31 U.S.C. § 3730.

7. The court has personal jurisdiction over the defendant pursuant to 31 U.S.C. § 3732(a) which authorizes nationwide service of process and because the defendant can be found in and transacts the business that is the subject matter of this lawsuit in the Eastern District of Wisconsin.

8. Venue is proper in this district pursuant to 31 U.S.C. § 3732(a) because the defendant can be found in and transacts the business that is the subject matter of this lawsuit in the Eastern District of Wisconsin.

## III. GENERAL FACTS AND FEDERAL FALSE CLAIMS ALLEGATIONS

9. This is an action to recover damages and civil penalties on behalf of the United States of America arising from false statements and claims made or caused to be made by the defendant, Odyssey Healthcare, Inc. to the United States and its agents and intermediaries in violation of the False Claims Act, 31 U.S.C. § 3729 *et. seq.* (the "FCA"), and the Medicare and Medicaid Patient Protection Act of 1987, 42 U.S.C. § 1320a-7b(b), and Debora Rouse, and Jane

Tuchalski, claim entitlement to a portion of any recovery obtained by the United States as *qui tam* plaintiffs authorized by 31 U.S.C. § 3730.

10. Since at least 2006, the defendant, Odyssey Healthcare Inc., knowingly misrepresented the condition of patients in order to submit false claims charges to the Medicare program under the Federal Social Security Act, and has provided kickbacks in the form of free nursing services to nursing homes in order to induce business reimbursed under Medicare.

11. The Relator, Debora Rouse ("Rouse") was at all times material to this complaint, an employee of the defendant, commencing employment in 2006.

12. As an employee for Odyssey from October 2006 through January 2007, Rouse worked as a triage supervisor. As a triage supervisor for Odyssey, Rouse oversaw nurses who provided direct care to patients in the Milwaukee area. She discussed the conditions of patients with nurses who provided treatment, and documented and reviewed medical records about patient care, and scheduled nurses who provided continuous care to patients.

13. The Relator, Jane Tuchalski ("Tuchalski") was at all times material to this complaint, an employee of the defendant, commencing employment in 2005.

14. Relator Tuchalski, worked as an on-call registered nurse from August 2005 through March 2007. As on-call registered nurse, Tuchalski traveled to residences and nursing homes to provide care for Hospice patients in the Milwaukee area, and assessed patients for eligibility for Continuous Care.

15. Relators bring this action for violations of the FCA on behalf of themselves and the United States pursuant to 31 U.S.C. § 3730(b) (1). Relators gained direct and independent knowledge of the information on which the allegations in the complaint are based through their

3
Case 2:08-cv-00383-LA   Filed 05/02/08   Page 3 of 13   Document 1

employment at Odyssey and voluntarily provided the information to the government before filing this action.

16. Odyssey is one of the largest hospice care providers in the country and derives approximately 93%-95% of its net patient revenue from payments it receives from the federally funded Medicare health insurance program for hospice care provided to its beneficiaries.

17. The Medicare hospice benefit is designed to provide care to ease the pain an discomforting symptoms of beneficiaries who have been certified as having a terminal illness which will inevitably result in death within 6 months if the illness runs its normal course. The benefit also provides psycho-social and spiritual support for patients and their loved ones. Hospice is intended to improve the comfort and quality of life of terminally ill patients in their final days, rather than to attempt to cure the patient's underlying terminal condition, and represents a low-cost alternative to high priced curative treatments that have little chance of success.

18. A Medicare beneficiary who elects the hospice benefit waives the right to receive standard Medicare benefits related to the illness, including all treatment aimed at attempting to reverse the terminal illness. The beneficiary may however continue to access standard Medicare benefits for treatment of conditions unrelated to the terminal illness.

19. Medicare pays the hospice provider a fixed amount for each day during the beneficiary's hospice length of care, regardless of the number of services provided. From this daily rate the hospice care provider, at its expense, is responsible for furnishing directly, or arranging for, all medical services, supplies, equipment and medications related to the hospice patient's terminal illness, except the services of an attending physician. The Medicare benefit for

hospice care does not cover expenses for room and board at nursing homes, or long-term care and assisted living facilities.

20. Medicare is prohibited from paying for services for which another federal entity is the primary payer. For instance, a dually eligible veteran residing at home may elect the Medicare hospice benefit. However, if the dually eligible veteran is admitted to a VA owned and operated inpatient facility, the hospice benefit is not available.

21. The hospice Medicare benefit covers services, including nursing care, medical, social services, physician's services, counseling services, short-term inpatient care, respite care for relief of care givers, general inpatient care for pain control and symptom management (not equivalent to hospital level of care), medical appliances and supplies, including drugs and biologics, home health aide and homemaker services, skilled therapies, and other items and services included in the plan of care.

22. Pursuant to 42 C.F.R. § 418.204(a), Hospice nursing care may be covered for up to 24 hours-a-day as continuous care during "periods of crisis."

23. A "crisis" under 42 C.F.R. § 418.204(a) is defined as a period in which an individual needs continuous care for palliation or to address acute symptoms in order to be able to stay in his or her home.

24. Coverage for continuous care under Pub. 100-02, Chapter 9 § 40.2.1., Centers for Medicare Policy Manual, only extends to "acute" medical crises in which "direct" patient care by a registered nurse or a licensed practical nurse is needed for a terminally ill patient to remain in his or her place of residence.

25. When fewer than eight hours of care is needed in a 24 hour period, services should be billed as routine care rather than continuous home care.

26. At least half of the minimum eight hours of care must be provided be a registered nurse or a licensed practical nurse, homemaker or home health aide services may supplement nursing care.

27. In the 2007 fiscal year, the federal government through Medicare reimbursed providers at a rate of $763.37 per a 24 hour period, or $31.81 per hour, for continuous home care compared to a flat rate of $130.79 per day for routine care.

## IV. ODYSSEY'S FRADULENT CONDUCT

28. Relator Rouse became familiar with Odyssey's practice of defrauding Medicare by diverting patients into Continuous Care even though the conditions of those patients were not adequately severe to qualify for such a placement under 42 C.F.R. § 418.204(a).

29. Relator Rouse gained direct knowledge of this scheme through detailed reviewing of patient records and speaking to nurses whom she supervised.

30. Relator Tuchalski became familiar with Odyssey's practice of defrauding Medicare by placing patients in Continuous Care even though their conditions were not adequately severe to qualify for such a placement under 42 C.F.R. § 418.204(a).

31. Relator Tuchalski gained direct knowledge that Odyssey defrauded Medicare through inappropriate placements by performing assessments of patients that revealed patients had wrongly been placed on Continuous Care.

32. Relator Tuchalski also discovered throughout the course of her employment that Odyssey actively pressured nurses to assess patients as qualifying for Continuous Home Care by urging nurses to be sensitive to patients' needs and portraying the recognition that patients needed Continuous Care as consistent with good nursing.

6
Case 2:08-cv-00383-LA   Filed 05/02/08   Page 6 of 13   Document 1

33. Odyssey knowingly distributed a Continuous Care manual for licensed practical nurses, which failed to allude to C.F.R. § 418.204(a) and its explicit guideline that Continuous Care should be reserved for "periods of crisis."

34. Instead, Odyssey's manual states that "[g]enerally the process of dying produces <u>acute</u> symptoms which require <u>skilled observations, care or management</u>." The Odyssey manual identifies a broad list of common symptoms for terminally ill patients, such as new medication orders, changes in the patient's request for services, and an increase in the length of visits to manage symptoms or anxiety as indicators for Continuous Care.

35. The manual was consistent with training for Continuous Care that Odyssey provided to registered nurses.

36. Relator Rouse reported the ongoing Continuous Care misclassification of Hospice patients to Odyssey's management in December, 2006.

37. Following this report, Odyssey conducted a brief investigation but failed to interview most of the nurses overseen by Relator Rouse who had direct contact with patients. Odyssey management deliberately instructed those nurses to stop communicating with Relator Rouse.

38. Relator Tuchalski was interviewed by an Odyssey investigator following the report by Relator Rouse.

39. Relator Tuchalski reported that she had resisted pressure to place patients at nursing homes on Continuous Care even though the patients did not qualify for Continuous Care under the Medicare regulations.

40. Placing patients on Continuous Care alleviates staffing shortages at nursing homes because the provision of intensive services by Hospice staff members greatly reduces or

7

eliminates the need for nursing home staff members to provide patient care. Since the federal government pays for Continuous Care, Continuous Care also benefits nursing homes by providing services for which nursing homes are not financially responsible.

41. Relator Rouse also became aware of a prevalent practice in which Odyssey "double booked" or charged Medicare for Continuous Care for one patient while the nurse assigned to that patient simultaneously was assigned to provide care to one or more other hospice patients.

42. Relator Rouse became aware of "double-booking" by reviewing records in which the same nurse recorded Continuous Care services for one patient while recording services for another Hospice patient in the same hour and during orientation from Kelly Cvetnic.

43. Relator Tuchalski gained firsthand knowledge of Continuous Home Care patients being double-booked through her on-call duties.

44. Relator Tuchalski persistently resisted pressure to make inappropriate Continuous Care placements, and was terminated because of that resistance on March 6, 2007.

45. Relator Rouse resigned from Odyssey on January 12, 2007 because of her strong disapproval of pressure and from Odyssey's fraudulent practices.

46. The United States of America has been damaged by all of the aforementioned misrepresentations and failures to comply with requisite agreements and regulations in an as of yet undetermined amount with respect to the aforementioned misrepresentations and failures to comply, Odyssey knowingly made false claims to officials of the United States for the purpose of obtaining compensation for the services they offered to their clients.

## V. COUNT ONE
### 31 U.S.C. §§ 3729(a) (1)

47. Relators reallege and incorporate by reference the allegations made in Paragraphs 1 through 47 of this Complaint.

48. This is a claim for treble damages and forfeitures under the False Claims Act, 31 U.S.C. §§ 3729-32, as amended.

49. Through the acts described above, Defendant and its agents and employees knowingly presented and caused to be presented to the United States Government fraudulent claims, records, and statements in order to obtain reimbursement for Continuous Care services, which carries a much higher rate of reimbursement than Routine Care.

50. Patient A provides an example of this practice. Patient A. spent at least 12 days on Continuous Care at Dove Health Care at Glendale in Milwaukee between late November and mid-December of 2006, but often only was given occasional doses of medicine rather than direct care for at least eight hours per day as required by the Medicare Benefit Policy Manual. The condition of Patient A. did not meet the definition of a "crisis" described above as required for Continuous Care under 42 C.F.R. § 418.204(a).

51. Odyssey violated 31 U.S.C. § 3729(a)(1) by seeking reimbursement from Medicare for Continuous Care services for Patient A., and various other patients whom Odyssey and its agents knew did not qualify for such services.

## VI. COUNT TWO
### 31 U.S.C. § 3729(a) (1)

52. Relators reallege and incorporate by reference the allegations made in paragraphs 1 through 52 of this Complaint.

53. Through the acts previously detailed in this complaint, Odyssey and its agents "double-booked" patients by assessing charges for Continuous Care while the same nurse also cared for one or more other Hospice patients during the same hour.

54. Patients A. and B., referenced above, are examples of this practice of caring for two patients at the same time. While Patient A was on Continuous Care at Dove Health Care at Glendale in Milwaukee on November 28, 2007, the Licensed Practical Nurse assigned to treat Patient A also was assigned to treat another Hospice patient, Patient B, on an hourly basis even though the patients were in different wings of the nursing home.

55. Patients A and C provide another example: While Patient A was on Continuous Care at Dove Health Care in mid-December 2007, nurses on various shifts who were assigned to treat Patient A also were assigned to treat another Hospice patient, Patient C, for several days on an hourly basis.

56. The same nurse servicing a patient on Continuous Care and other patients within the same hour is inconsistent with the requirements of both 42 C.F.R. § 418.204(a), which defines a "crisis" as a period in which an individual patient requires continuous care to alleviate suffering, and the Medicare Benefits Policy Manual, which mandates direct patient care.

57. Odyssey violated 31 U.S.C. § 3729(a) (1) by intentionally misrepresenting the nature of care provided to patients in order to fraudulently bill Medicare for Continuous Care.

## VII. COUNT THREE
### 31 U.S.C. § 3730(h) Relator Jane Tuchalski

58. Relator realleges and incorporates by reference the allegations made in Paragraphs 1 through 58 of this Complaint.

59. This is a claim for damages and penalties under the False Claims Act, 31 U.S.C. § 3730(h) *et. . seq.*, as amended.

60. Through the acts of the Defendant described above, relator Tuchalski was discharged and discriminated against by Odyssey because of lawful acts done by Tuchalski, including the investigation of all counts against Odyssey listed above in this complaint and her continuous complaints to Debora Rouse, her supervisor, regarding the matters herein described despite being instructed not to do so by Marnee Behrens.

61. By reason of the Defendant's conduct, Relator suffered damages and is entitled to relief including, but not limited to, reinstatement with the same seniority status Tuchalski would have had but for the discrimination, two (2) times the amount of back pay, interest on the back pay, and compensation for any special damages sustained as a result of the discrimination, including litigation costs and reasonable attorneys' fees.

## VIII. COUNT FOUR
## 42 U.S.C. § 1320a-7b(b)

62. Relators reallege and incorporate paragraphs by reference the allegations made in Paragraphs 1 through 62 of this complaint.

63. Relator Tuchalski assessed two patients at Wisconsin Lutheran Child & Family Services in Milwaukee in winter 2006 and determined the patients were inappropriate for Continuous Home Care.

64. Relator Tuchalski's Odyssey supervisor then ordered her to apologize to the Odyssey case manager who had promised Wisconsin Lutheran Child & Family Services that the patients would be placed on Continuous Care.

65. Placing the patients on Continuous Care would have provided a benefit to Wisconsin Lutheran Child & Family Services in the form of intensive nursing services for its patients at no cost to the nursing home because the federal government would have been charged through Medicare for those services.

66. On another occasion in fall 2006, Relator Tuchalski was sent by Odyssey at about 2:00 a.m. to assess patients at various nursing homes in order to find a patient to place on Continuous Home Care after one of Odyssey's Continuous Home Care patients died.

67. Relator Tuchalski was criticized by her supervisor for failing to find a replacement patient for Continuous Care.

68. On various occasions, Relator Tuchalski was forced to explain and justify her decisions that patients she assessed were inappropriate for Continuous Care.

69. In exchange for its practice of promoting Continuous Care services for patients who did not meet the Medicare guidelines for such services, Odyssey received referrals from facilities that benefited from having its patients treated by Odyssey nurses at no cost to the facilities.

70. Odyssey violated 42 U.S.C. § 1320a-7b(b)(2) by seeking to induce referrals by inappropriately placing nursing home patients on Continuous Care, for which the federal government was billed through Medicare.

**WHEREFORE**, Plaintiffs/Relators request that judgment be entered against Defendant, ordering that:

a. Defendant cease and desist from violating the False Claims Act, 31 U.S.C. § 3729 *et. seq.*;

b. Defendant pay an amount equal to three times the amount of damages the United States has sustained because of defendant's actions, plus a civil penalty against defendant of not less than $5,000 and not more than $11,000 for each violation of 31 U.S.C. § 3729;

c. Plaintiffs/Relators be awarded the maximum amount allowed pursuant to 31 U.S.C. § 3730(d);

d. Defendant cease and desist from violating 42 U.S.C. § 1320a-7b(b) *et. seq.* .

e. Plaintiff/Relator Tuchalski be awarded reinstatement with the same seniority status, two-times the amount of back pay and interest. 31 U.S.C. § 3730(h);

f. Plaintiffs/Relators be awarded all costs of this action, including attorneys' fees, expenses, and costs pursuant to 31 U.S.C. § 3730(d);

g. The United States and Plaintiffs/Relators be granted all such other relief as the Court deems just and proper.

PLEASE TAKE NOTICE THAT THE PLAINTIFF DEMANDS THE ABOVE ENTITLED ACTION BE TRIED TO A 12 PERSON JURY.

Respectfully submitted and dated 1st day of May 2008.

Cross Law Firm, S.C.
Attorneys for Debora Rouse and Jane Tuchalski

By: _____
Nola J. Hitchcock Cross Law Firm
Wisconsin State Bar Number: 1015817
Lawyer's Building
845 North 11th Street
Milwaukee, WI 53233
Phone: (414) 224-0000
Fax:    (414) 273-7055